444

[Nos. 39598-3-II; 40105-3-II; Division Two. September 5, 2012.]
39688-2-II; 39705-6-II.

THE STATE OF WASHINGTON, *Respondent*, v. MIKE ROBERT McCREVEN, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. BARRY FORD, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. TERRY NOLAN, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. CARL LEE SMITH, *Appellant*.

*Jennifer M. Winkler* (of *Nielsen, Broman & Koch PLLC*); *Mary Katherine Young High*; *Lise Ellner*; and *Kathryn A. Russell Selk* (of *Russell Selk Law Office*), for appellants.

*Mark E. Lindquist, Prosecuting Attorney*, and *Melody M. Crick, Deputy*, for respondent.

¶1 QUINN-BRINTNALL, J. — A jury found appellants Terry Nolan, Mike McCreven, Barry Ford, and Carl Smith guilty of second degree felony murder by assault for the death of Dana Beaudine. The same jury also found that Nolan assaulted Vincent James with a deadly weapon, a sap,[1] when James tried to come to Beaudine's aid. In this consolidated appeal, the codefendants[2] challenge their con-

---

[1] A steel, leather-wrapped baton.

[2] Where a claim or fact applies to all four appellants, we refer to Nolan, McCreven, Ford, and Smith as the "codefendants." RAP 10.4(e). For clarity, where a fact or claim is relevant to one, two, or three of the codefendants, we identify the parties by name.

victions, asserting 62 assignments of error.[3] Smith and McCreven filed statements of additional grounds (SAG).[4]

¶2 In the 574 pages of briefing, the parties present a number of legal issues for our review, including challenges to (1) the trial court's ruling admitting Bandidos motorcycle gang evidence, (2) the prosecution's closing argument, (3) the jury instructions defining "self-defense," and (4) the sufficiency of the evidence supporting the jury's verdicts. In this opinion, we focus primarily on the issues dispositive of the appeal. Our review of the record of this protracted trial reveals that the Bandidos evidence was inadmissible and unduly prejudicial, that the challenged portions of the prosecution's closing argument were improper, and that the jury instructions defining "self-defense" were also improper. These errors require that we reverse the codefendants' convictions, vacate their sentences, and remand for a new trial.

## FACTS

¶3 On April 5, 2008, Beaudine died after being stabbed with a knife several times during a fight in the Bull's Eye Sports Lounge parking lot in Spanaway, Washington. A Pierce County Sheriff's Department investigation led to the arrest of the four codefendants the following morning. Investigating officers recovered a knife and a sap from the Bull's Eye's parking lot.

¶4 On April 9, the State charged the codefendants with second degree murder by second degree assault while armed with a deadly weapon, a knife. RCW 9A.32.050(1)(b); RCW 9A.36.021(1)(c); RCW 9.94A.510, .535(3)(w); former RCW 9.94A.533 (2007); former RCW 9.94A.602 (1983). The State also charged the codefendants with second degree assault with a deadly weapon, a sap, for an assault on

---

[3] The codefendants adopt and incorporate each other's relevant assignments of errors and arguments. RAP 10.1(g).

[4] RAP 10.10.

James, whom the State alleged was struck on the head with the sap while attempting to come to Beaudine's rescue. RCW 9A.36.021(1)(c). On January 30 and March 13, 2009, the State filed amended informations alleging an aggravating circumstance: that James was acting as a good Samaritan. RCW 9.94A.510; former RCW 9.94A.533; former RCW 9.94A.602. The codefendants pleaded not guilty to both charges.

¶5 A jury trial began on April 9, and proceeded for two months.[5] The State called 24 witnesses, Nolan called 1 witness, and Smith and McCreven each called 3 witnesses. The parties gave their closing arguments to the jury on June 9. On June 15, the jury found all four codefendants guilty of second degree murder while armed with a deadly weapon. The jury also entered a verdict finding only Nolan guilty of second degree assault while armed with a deadly weapon for the assault on James. The codefendants timely appeal.

## DISCUSSION

MOTORCYCLE CLUB EVIDENCE

¶6 The codefendants assert that the trial court erred by admitting irrelevant, prejudicial motorcycle club evidence. Specifically, the codefendants argue they were denied their rights to a fair trial by the State's introduction of prejudicial Hidalgos motorcycle riding club membership evidence and irrelevant Bandidos motorcycle gang evidence. The codefendants further argue that the trial court did not conduct the required ER 404(b) analysis on the record and that the trial court's limiting instructions were inadequate to cure the prejudice from the erroneous admission of the evidence.

¶7 For its part, the State asserts it offered the evidence to prove identity as permitted by the trial court's order in

---

[5] Although trial was initially set for June 3, 2008, because of scheduling conflicts, the parties agreed to continue trial to April 2, 2009. Scheduling issues did not cease once trial began, however, and a number of recesses interspersed throughout the proceedings caused the trial to carry on for two months.

limine. In its brief, the State argues that the evidence was also admissible as res gestae or under the ER 404(b) motive exception. As to proving accomplice liability, the State argues that the associational evidence showing an existing friendship amongst the codefendants was necessary and relevant. We hold that the trial court erred by admitting the Bandidos-related evidence because it failed to conduct the required ER 404(b) analysis on the record. In addition, on this record, the State failed to meet the prima facie case for admission of the Bandidos evidence for any proper purpose. Last, although the State asserts it offered the evidence to prove identity, our review of the record reveals that it used the evidence improperly as character evidence.

A. MOTIONS IN LIMINE

¶8 The codefendants moved in limine to exclude evidence of motorcycle club membership, paraphernalia, jackets, and T-shirts on First Amendment rights to association and relevancy grounds. The trial court denied the motion in part, allowing the State to offer evidence of the codefendants' clothing alleged to have been worn on the night of the incident to prove identity. The trial court granted the portion of the codefendants' motion to prohibit the State from offering membership evidence to prove association and from offering other motorcycle club paraphernalia found in the codefendants' homes unrelated to the events on the night in question.

B. BANDIDOS MOTORCYCLE GANG EVIDENCE

¶9 In addition to the Hidalgos clothing which the State alleged the assailants wore on the night of Beaudine's death, the State also offered photographs depicting Ford wearing a motorcycle riding vest with a button that read, "I support the Bandidos"; Smith wearing a Bandidos T-shirt; McCreven's motorcycle with a Bandidos decal; and McCreven's disorderly bedroom and closet showing several motorcycle riding vests and chaps. 7 Report of Proceedings

(RP) at 947. The codefendants objected repeatedly to the photographs on the grounds that their admission violated the trial court's ruling in limine, and that they were prejudicial, irrelevant, and duplicative. The codefendants asked that the photographs be cropped such that the Bandidos insignia would not be shown. The trial court denied the request.

¶10 After hearing extensive argument, the trial court admitted the photographs, stating, "The issue in this case is the identity of the persons who were involved in this fight." 7 RP at 899. The trial court reasoned that because the codefendants pleaded not guilty, identity was "a big issue" and found that the photographs "simply go to the issues of identity." 7 RP at 899. The trial court stated that it would be willing to give "some sort of a limiting instruction on the constitutional protected rights of association, if it's crafted correctly." 7 RP at 899.

C. LIMITING INSTRUCTIONS

¶11 The codefendants proposed a limiting instruction that the photographs of clothing were "offered for the limited purposes the defendants may own clothing similar to that depicted and they may not be considered for any other purpose." 7 RP at 890. The State objected, arguing that the photographs showed the codefendants knew each other, which was relevant because the State had charged them as accomplices. The codefendants countered that the trial court had already ruled that evidence showing mere association or membership would not be admitted. Ultimately, defense counsel argued that a limiting instruction could not cure the prosecutor's improper use of the photographs to establish guilt by association with the Bandidos.

¶12 The trial court declined to give the codefendants' proposed limiting jury instructions. Instead, the trial court instructed the jury that "[e]vidence has been introduced in this case on the subject of defendant's association with the Hidalgos motorcycle club. The mere association with a

motorcycle club is a protected constitutional right. Any discussion of the evidence during your deliberations must be consistent with this limitation." Clerk's Papers (CP) at 1189. The trial court also instructed the jury that "[c]ertain evidence has been admitted in this case for only a limited purpose. This evidence consists of photographs depicting motorcycle garb and/or club affiliation and maybe considered by you for the purpose of identification. Any discussion of the evidence during your deliberations must be consistent with this limitation." CP at 1190.

D. STANDARD OF REVIEW

¶13 We review a trial court's decision to admit or exclude evidence under ER 404(b) for abuse of discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995); *State v. Campbell*, 78 Wn. App. 813, 821, 901 P.2d 1050 (citing *State v. Dennison*, 115 Wn.2d 609, 628, 801 P.2d 193 (1990)), *review denied*, 128 Wn.2d 1004 (1995). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Powell*, 126 Wn.2d at 258. We will not disturb a trial court's ruling on the admissibility of evidence if it is sustainable on alternative grounds. *State v. St. Pierre*, 111 Wn.2d 105, 119, 759 P.2d 383 (1988).

E. ER 404(b) ANALYSIS

¶14 Evidence is relevant if it has any tendency to make the existence of any material fact more or less probable. ER 401. Even relevant evidence may be inadmissible if the danger of unfair prejudice substantially outweighs its probative value. ER 403. The danger of unfair prejudice exists when evidence is likely to stimulate an emotional rather than a rational response. *Powell*, 126 Wn.2d at 264. In determining whether the probative value of evidence outweighs its unfair prejudice, a trial court should consider the availability of other means of proof and other factors. *Powell*, 126 Wn.2d at 264.

■ ■ ¶15 Evidence of prior bad acts is presumptively inadmissible. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). ER 404(b) provides,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, ER 404(b) prohibits the admission of evidence to show the character of a person to prove the person acted in conformity with it on a particular occasion. *State v. Everybodytalksabout*, 145 Wn.2d 456, 466, 39 P.3d 294 (2002).

■ ¶16 Before admitting evidence under ER 404(b),

> "the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value of the evidence against its prejudicial effect."

*State v. Asaeli*, 150 Wn. App. 543, 576, 208 P.3d 1136 (quoting *State v. Pirtle*, 127 Wn.2d 628, 648-49, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996)), *review denied*, 167 Wn.2d 1001 (2009). Generally, the trial court must conduct the ER 404(b) analysis on the record. *Asaeli*, 150 Wn. App. at 576 n.34. A trial court should resolve doubts as to admissibility of prior bad acts character evidence under ER 404(b) in favor of exclusion. *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002) (citing *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986)). If the trial court admits ER 404(b) evidence, "it must provide the jury with a limiting instruction specifying the purpose of the evidence." *Asaeli*, 150 Wn. App. at 577 n.35 (citing *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007)).

¶17 Here, the trial court did not conduct an ER 404(b) analysis on the record before admitting the Bandidos-

related evidence. Rather, the trial court ruled that motor-cycle riding clothing, generally, was admissible to prove identity. During trial, over numerous defense objections as to the relevance and prejudicial impact of the Bandidos-related evidence, the trial court simply ruled, "All right. All of the exhibits that are objected to are admitted." 7 RP at 885. And when the State later argued that the photographs were relevant to the accomplice charges because they showed that the codefendants knew each other, the trial court merely reiterated its ruling that the evidence was admissible as to identity.

¶18 The record shows that despite defense counsels' exhaustive arguments as to the prejudicial nature of the Bandidos evidence, the trial court did not differentiate between the evidence that the assailants wore Hidalgos "colors" and the codefendants owned Hidalgos-emblazoned motorcycle clothing described by the witnesses to the fight and the Bandidos evidence, which had no established connection to the fight that left Beaudine dead. Neither limiting instruction addressed or limited the jury's consideration of the Bandidos-related evidence. *Asaeli*, 150 Wn. App. at 576-77 n.35 (citing *Foxhoven*, 161 Wn.2d at 175). No witness testified to seeing the codefendants wearing Bandidos paraphernalia on the night of the incident. Moreover, there was no nexus between the Bandidos motorcycle gang and the codefendants' Hidalgos motorcycle club membership established on the record presented for our review. *Cf. United States v. Cortinas*, 142 F.3d 242, 249 (5th Cir.) (Bandidos evidence was not prejudicial because the jury heard the codefendants were members of another motor-cycle club, "a boot camp organization for the Bandidos."), *cert. denied*, 525 U.S. 897 (1998).

¶19 The Bandidos is a notorious motorcycle gang whose members pride themselves on not being law-abiding citizens. *United States v. Jackson*, 845 F.2d 1262, 1264 (5th Cir. 1988). Prospective members must commit a felony witnessed by other members before they are granted member-

ship. *Jackson*, 845 F.2d at 1264. The Bandidos also have a code of retribution against anyone who testifies against them. *Jackson*, 845 F.2d at 1264; *see United States v. Fabel*, 312 F. App'x 932, 935 (9th Cir.) (defining "Outlaw Motorcycle Gangs" as organizations such as the Bandidos, Black Pistons, Hells Angels, Mongols, Outlaws, Pagan's, and Vagos " 'whose members use their motorcycle clubs as conduits for criminal enterprises' " (quoting DEPARTMENT OF JUSTICE, http://www.usdoj.gov/criminal/gangunit/about/omgangs.html)), *cert. denied*, 556 U.S. 1265 (2009).

¶20 Although the jury did not hear specific evidence of the Bandidos motorcycle gang and their reputation for violence, our review of the record reveals that several jurors acknowledged during voir dire that they were familiar with either the Bandidos' reputation or motorcycle clubs or gangs, generally. Thus, from this record, it appears that the photographs depicting Bandidos (rather than Hidalgos) insignia were irrelevant and unduly prejudicial. ER 401, 403; *Powell*, 126 Wn.2d at 264; *see State v. Ray*, 116 Wn.2d 531, 546-47, 806 P.2d 1220 (1991) (a trial court's erroneous admission of evidence is harmless if the evidence did not materially affect the outcome of trial); *cf. Cortinas*, 142 F.3d at 248 (vacating convictions because limiting instructions were inadequate "to mitigate the prejudicial effect of the overwhelming testimony regarding the violent, criminal activities of the Bandidos").

¶21 On appeal, the State does not contend that the codefendants wore *Bandidos* insignia on the night of the incident or that the *Bandidos*-related buttons, shirts, and decals are "similar" to the *Hidalgos* patches the State alleged the codefendants wore on the night of the incident. Neither does the State argue it did not have available other photographs depicting the codefendants in motorcycle riding gear without Bandidos insignia.[6] *See, e.g., Powell*, 126 Wn.2d at 264. And because the State argued at trial that

---

[6] It appears that of the four available photographs showing McCreven's motorcycle's color, configuration, and saddlebags, the State offered only the photograph

the codefendants assaulted Beaudine because he insulted their *Hidalgos* membership, the Bandidos evidence does not appear to fall under either res gestae or the ER 404(b) motive exception for admissibility.

¶22 Accordingly, because the record before us is devoid of any consideration by the trial court as to the relevance or admissibility of the inflammatory Bandidos evidence as required before admitting evidence under ER 404(b), we must reverse the codefendants' convictions, including Nolan's second degree assault conviction, and remand for a new trial. *Asaeli*, 150 Wn. App. at 576-77 n.34. As to the Hidalgos evidence, however, the trial court did not err. It conducted the required ER 404(b) analysis and properly admitted that evidence to prove the identity of those persons witnesses testified were involved in the fight.

SELF-DEFENSE JURY INSTRUCTIONS

 ¶23 Next, for the first time on appeal, Nolan, McCreven, and Smith contend that the trial court gave jury instructions that impermissibly lowered the State's burden to disprove self-defense or that raised the standard for the jury to find they acted in self-defense. RAP 2.5(a). Specifically, Nolan, McCreven, and Smith argue that because the predicate felony in this case was second degree assault, "the mental element which the self-defense was available to negate was not a mental element related to the unintended death which occurred 'in the course of and in furtherance' of the assault" but for the second degree assault itself. Br. of Appellant (Smith) at 77. Smith argues that "[f]or a person to act in self-defense in committing an assault, he or she must reasonably fear injury, not great personal injury." Br. of Appellant (Smith) at 77 (citing RCW 9A.16.020(3)). We agree.

 ¶24 We review de novo a jury instruction challenge and evaluate the jury instruction " 'in the context of

---

showing the "Bandidos" decal. McCreven objected, arguing that the photograph was prejudicial and irrelevant because no witness had testified to seeing a Bandidos decal. The trial court overruled his objection without explanation.

the instructions as a whole.' " *State v. Knutz*, 161 Wn. App. 395, 403, 253 P.3d 437 (2011) (quoting *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289, *cert. denied*, 510 U.S. 944 (1993)). " 'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.' " *Knutz*, 161 Wn. App. at 403 (internal quotation marks omitted) (quoting *State v. Aguirre*, 168 Wn.2d 350, 363-64, 229 P.3d 669 (2010)). Jury instructions on self-defense must more than adequately convey the law. *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996), *abrogated by State v. O'Hara*, 167 Wn.2d 91, 217 P.3d 756 (2009). The instructions "must make the relevant legal standard 'manifestly apparent to the average juror.' " *LeFaber*, 128 Wn.2d at 900 (internal quotation marks omitted) (quoting *State v. Allery*, 101 Wn.2d 591, 595, 682 P.2d 312 (1984)); *State v. Painter*, 27 Wn. App. 708, 713, 620 P.2d 1001 (1980), *review denied*, 95 Wn.2d 1008 (1981). "A jury instruction misstating the law of self-defense amounts to an error of constitutional magnitude and is presumed prejudicial." *LeFaber*, 128 Wn.2d at 900. Accordingly, we will review an alleged error that a self-defense jury instruction misstates the law raised for the first time on appeal. RAP 2.5(a)(3); *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (citing *State v. L.B.*, 132 Wn. App. 948, 952, 135 P.3d 508 (2006)).

■■ ¶25 "To be entitled to a jury instruction on self-defense, the defendant must produce some evidence demonstrating self-defense; however, once the defendant produces some evidence, the burden shifts to the prosecution to prove the absence of self-defense beyond a reasonable doubt." *State v. Walden*, 131 Wn.2d 469, 473-74, 932 P.2d 1237 (1997) (citing *State v. Janes*, 121 Wn.2d 220, 237, 850 P.2d 495 (1993); *State v. Acosta*, 101 Wn.2d 612, 619, 683 P.2d 1069 (1984)). "[T]he degree of force used in self-defense is limited to what a reasonably prudent person would find necessary under the conditions as they appeared

to the defendant." *Walden*, 131 Wn.2d at 474 (citing *State v. Bailey*, 22 Wn. App. 646, 650, 591 P.2d 1212 (1979)).

¶26 Here, the trial court gave the following self-defense jury instruction patterned after 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 16.02, at 234 (3d ed. 2008) (WPIC):

> It is a defense to a charge of murder in the second degree that the homicide was justifiable as defined in this instruction.
>
> Homicide is justifiable when committed in the lawful defense of the defendant or any person in the defendant's presence or company when:
>
> (1) the defendant reasonably believed that the person killed or others whom the defendant reasonably believed were acting in concert with the person killed *intended to commit a felony or to inflict death or great personal injury*;
>
> (2) the defendant reasonably believed that there was imminent danger of such harm being accomplished; and
>
> (3) the defendant employed such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the defendant, taking into consideration all the facts and circumstances as they appeared to him at the time of and prior to the incident.
>
> The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

CP at 1205 (emphasis added). The trial court also instructed the jury that

> [a] person is entitled to act on appearances in defending himself or another, if that person believes in good faith and on reasonable grounds that he or another is in actual danger of *great personal injury*, although it afterwards might develop that the person was mistaken [as] to the extent of the danger.
>
> Actual danger is not necessary for a homicide to be justifiable.

CP at 1206 (emphasis added). The trial court further instructed, " 'Great personal injury' means an injury that the defendant reasonably believed, in light of all the facts and circumstances known at the time, would produce *severe pain and suffering* if it were inflicted upon either the defendant or another person." CP at 1210 (emphasis added); 11 WPIC 2.04.01, at 30. Last, the trial court instructed,

It is a defense to a charge of murder in the second degree based upon committing or attempting to commit assault in the second degree that the defendant:

(1) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and

(2) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury; and

(3) Had no reasonable grounds to believe that any other participant was armed with such a weapon, instrument, article, or substance; and

(4) Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

The defendant has the burden of proving this defense by a preponderance of the evidence.

CP at 1212. Read together, these jury instructions raise the degree of threat of injury that Nolan, McCreven, and Smith must have reasonably perceived to have lawfully acted in self-defense. The instructions impermissibly lower the State's burden to disprove that Nolan, McCreven, and Smith acted in self-defense to the second degree assault charge, the predicate felony necessary to establish second degree murder. RCW 9A.36.021(1)(a); *Walden*, 131 Wn.2d at 473-74 (citing *Janes*, 121 Wn.2d at 237).

¶27 To convict the codefendants of second degree felony murder, the State must first prove beyond a reasonable

doubt that they, or an accomplice, intentionally assaulted Beaudine and either recklessly inflicted substantial bodily harm on Beaudine or assaulted Beaudine with a deadly weapon. RCW 9A.36.021(1)(a), (c); RCW 9A.32.050(1)(b). A person acts recklessly " 'when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation.' " *State v. Gamble*, 154 Wn.2d 457, 467, 114 P.3d 646 (2005) (quoting RCW 9A.08.010(1)(c)). "Substantial bodily harm means bodily injury that involves a temporary but substantial disfigurement, or that causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or that causes a fracture of any bodily part." CP at 1197; RCW 9A.04.110(4)(b); 11 WPIC 2.03.01, at 26.

¶28 Here, the requisite mens rea the State must establish to prove second degree assault under RCW 9A.36-.021(1)(a) is that the codefendants disregarded a substantial risk that their act would cause Beaudine temporary but substantial disfigurement, loss, or impairment of function of any bodily organ. RCW 9A.04.110(4)(b). To be clear, to convict under RCW 9A.36.021(1)(a), the State need not prove the codefendants intended to cause Beaudine's death; "great personal injury," i.e., severe pain and suffering; or "serious physical injury." A person is entitled to use force to defend himself and prevent an injury less than great or serious physical injury or death. *See State v. Slaughter*, 143 Wn. App. 936, 942, 186 P.3d 1084 (where a defendant is charged with felony murder based on the predicate felony of assault, 11 WPIC 17.02, at 253, may be used because the defendant could argue that he used reasonable force to prevent injury when the accidental killing occurred), *review denied*, 164 Wn.2d 1033 (2008); *see also Kyllo*, 166 Wn.2d at 864 ("act on appearances" instruction based on the apprehension of "great bodily harm" is improper in a case involving the use of nondeadly force and a defense of

self-defense). But under the trial court's instructions, to find that Nolan, McCreven, and Smith lawfully defended themselves, the jury was required to find that they reasonably believed that Beaudine was about to inflict great or serious personal injury and that they had to use force to avoid this degree of injury.

¶29 In addition, although the State charged the codefendants under RCW 9A.36.021(1)(c), i.e., second degree assault with a deadly weapon, for the assault on James, the trial court gave a WPIC 17.02 patterned jury instruction on that charge:

> It is a defense to a charge of Assault that the force used was lawful as defined in this instruction.
>
> *The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured or by someone lawfully aiding a person who he reasonably believes is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.*
>
> The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.
>
> The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

CP at 1213 (emphasis added). Inexplicably, the trial court gave the higher threat standard WPIC 16.02 instruction for the charge brought under RCW 9A.36.021(1)(a), which requires only a reasonable belief of imminent substantial bodily injury, but gave the lesser threat standard WPIC 17.02 instruction for the charge brought under RCW 9A.36.021(1)(c), which requires reasonable belief of harm from a deadly weapon.

¶30 "Deadly force may be used only in self-defense if the defendant reasonably believes he or she is threatened with death or 'great personal injury.' " *Walden*, 131 Wn.2d at 474. Thus, where the State charges a defendant with second degree felony murder under RCW 9A.36.021(1)(c), assault with a deadly weapon, a self-defense instruction may be reasonably patterned after WPIC 16.02. *State v. Ferguson*, 131 Wn. App. 855, 856-59, 129 P.3d 856 (a WPIC 17.02 patterned instruction is inappropriate where the defendant is charged with second degree felony murder predicated on second degree assault with a deadly weapon, a knife), *review denied*, 158 Wn.2d 1016 (2006). Because, here, as in *Ferguson*, the codefendants used deadly force, the trial court properly gave a self-defense instruction based on WPIC 16.02 for the second degree felony murder charged under RCW 9A.36.021(1)(c) (deadly weapon). 131 Wn. App. at 862 ("it can never be reasonable to use a deadly weapon in a deadly manner unless the person attacked had reasonable grounds to fear death or great bodily harm").

¶31 The trial court erred, however, when it did not give a jury instruction patterned after WPIC 17.02 for the second degree felony murder charge the State alleged occurred during an assault in violation of RCW 9A.36.021(1)(a) (without a deadly weapon). As a result, the jury instructions lessened the State's burden to disprove Nolan's, McCreven's, and Smith's claims that they were acting in self-defense. The instructions as a whole did not reflect the correct level of feared injury and thus did not reflect the legal standard of self-defense in this case. *Knutz*, 161 Wn. App. at 403 (quoting *Aguirre*, 168 Wn.2d at 363-64). This manifest, prejudicial instructional error of constitutional magnitude compels that we reverse the codefendants' second degree felony murder convictions. RAP 2.5(a); *LeFaber*, 128 Wn.2d at 900-03.

PROSECUTORIAL MISCONDUCT

¶32 Next, the codefendants assert that they were denied their fair trial rights by the prosecutor's several instances of misconduct. We agree.

¶33 To prevail on a claim of prosecutorial misconduct, the defendant must establish " 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.' " *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (quoting *State v. Hughes*, 118 Wn. App. 713, 727, 77 P.3d 681 (2003), *review denied*, 151 Wn.2d 1039 (2004)); *State v. Gregory*, 158 Wn.2d 759, 809, 147 P.3d 1201 (2006) (citing *State v. Kwan Fai Mak*, 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986)); *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). The defendant must establish prejudice by proving " 'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.' " *Magers*, 164 Wn.2d at 191 (alteration in original) (quoting *Pirtle*, 127 Wn.2d at 672); *Dhaliwal*, 150 Wn.2d at 578. Where a defendant objected to an alleged instance of misconduct, we evaluate the trial court's ruling for abuse of discretion. *Gregory*, 158 Wn.2d at 809. The "failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995); *accord State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009).

¶34 First, the codefendants[7] assert that during closing arguments, the prosecutor shifted the burden of proof on the theories of self-defense and defense of others

---

[7] Ford asserts that although he did not argue self-defense at trial, he participated in his codefendants' "objections because they constituted a comment on his and the other defendants['] right to remain silent and shifted the burden of proof." Br. of Appellant (Ford) at 83-84.

and that the trial court failed to provide a curative instruction by refusing to rule on their numerous objections.[8] Specifically, the codefendants assert that the State improperly argued that there was no evidence to support a self-defense claim and "informed the jury it need not even consider the court's instructions to that effect." Br. of Appellant (Nolan) at 34. The State concedes that the prosecutor "misspoke" and that her argument was "inartful." Br. of Resp't at 115, 117. The State argues, however, that the codefendants cannot show prejudice because the misstatement was "not repeated" and the jury was properly instructed. Br. of Resp't at 115-16.

¶35 As we discussed above, the self-defense instructions improperly informed the jury of the law governing their deliberations. In addition, our review of the record reveals the same misstatement of the law in the State's rebuttal closing argument. The challenged argument is as follows:

> [STATE]: The defense that is set forth in one of the instructions, that you have that tells you, that each of the Defendants if they want you to believe that they were defending themselves, or defending others, they want to put forth that statutory defense to the murder of Dana Beaudine, have to prove to you by a preponderance of the evidence that it's more likely than not that that particular defendant did not aid in the --
>
> [NOLAN]: I am going to object to the characterization that the defendants have to prove by a preponderance that they acted in self-defense or in defense of others. It's not the law.

---

[8] In response to both defense and State objections during closing argument, the trial court repeated the same "ruling": either that "the jury will decide facts," or that "the jury has been instructed properly." The trial court explained, "I am always worried if I make a ruling, if it's too wordy, then somebody is going to say the judge made a comment on the evidence. So, and even overruling an objection, or sustaining an objection could possibly be treated as a comment on the evidence." 21 RP at 2958-59.

A trial court has broad discretion to control the scope of closing argument and may rule on an objection and give reasons for its ruling without violating the constitutional prohibition on comments against the evidence. *State v. Frazier*, 55 Wn. App. 204, 212-13, 777 P.2d 27, *review denied*, 113 Wn.2d 1024 (1989); *see* WASH. CONST. art. IV, § 16; *State v. Cerny*, 78 Wn.2d 845, 855-56, 480 P.2d 199 (1971), *judgment vacated in part on other grounds*, 408 U.S. 939, 92 S. Ct. 2873, 33 L. Ed. 2d 761 (1972).

470

THE COURT: The jury has been instructed on the law.

[STATE]: The defendant has to prove to you by a preponderance that he did not aid in the assault, that he was not personally armed with a deadly weapon, that he had no reason to believe that anyone else was armed with a knife, and that he had no reason to believe that any of his accomplices would engage in conduct that would cause death, or physical injury, to [Beaudine].

20 RP at 2816-17. McCreven's and Nolan's counsel argued to the jury that it was the State's burden to disprove self-defense or the defense of others. The State, during rebuttal closing argument, acknowledged that it was the State's burden to disprove self-defense but added, "What I want to say is this, for the State to disprove self-defense, first there must be proof of self-defense." 21 RP at 2935. Smith's counsel objected to the prosecutor's argument as a misstatement of the law. Again, in response to the defense objection, the trial court reiterated that the jury had been instructed on the law of the case.

¶36 The prosecutor then argued, "How do I disprove that the Defendant reasonably believed that there was imminent danger, when there has been no evidence that the Defendant reasonably believed that there was imminent danger? Ladies and gentleman, there is nothing to disprove that because there is no evidence of it." 21 RP at 2936. The State continued, "So if there is no evidence of self-defense, how is it that they even get to argue it?" 21 RP at 2937. The codefendants objected and the trial court again ruled, "[T]he jury has been instructed on the law of the case, and the jury will decide the facts of this case." 21 RP at 2937.

¶37 As to the issue of burden shifting, we hold that the prosecutor's comments on the law of self-defense and defense of others are erroneous. *State v. Thorgerson*, 172 Wn.2d 438, 467, 258 P.3d 43 (2011). "[A] prosecutor generally cannot comment on the lack of defense evidence because the defense has no duty to present evidence." *Thorgerson*, 172 Wn.2d at 467 (citing *State v. Cheatam*, 150

Wn.2d 626, 652, 81 P.3d 830 (2003)). Here, the prosecutor's misleading comments suggested that the codefendants must first prove self-defense to the *jury*, and that the State could not disprove the affirmative defense. This is not the law in Washington.

¶38 Whether the defense has presented evidence of self-defense is a question for the trial court to address when deciding whether to instruct the jury on the law of self-defense. *Walden*, 131 Wn.2d at 473. Once the trial court has found evidence sufficient to require a self-defense instruction, that inquiry, even if erroneous, has ended. Thus, the prosecutor's argument improperly sought to shift the burden of proof to the defense and the trial court erred when it overruled the defense objections. *Thorgerson*, 172 Wn.2d at 466 (citing *Gregory*, 158 Wn.2d at 859-60); *Gregory*, 158 Wn.2d at 809. Because we hold that the self-defense jury instructions impermissibly lowered the State's burden to disprove self-defense, we cannot hold that the prosecutor's misstatements were harmless when viewed in the context of the entire case. *Russell*, 125 Wn.2d at 85-86; *State v. Fiallo-Lopez*, 78 Wn. App. 717, 729, 899 P.2d 1294 (1995) (a constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error). We must presume the jury followed the erroneous self-defense jury instructions. *See State v. Swan*, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991).

¶39 Second, the codefendants assert that the prosecutor misstated the jury's obligation to decide the "truth." Specifically, the codefendants argue that the prosecutor sought to align herself with "truth seeking and the defense with trickery," and misstated the jury's fact-finding function. Br. of Appellant (Nolan) at 38. The State asserts that the prosecutor did not misstate the law, "imply that the State had any other burden besides the burden of beyond a reasonable doubt," and "did not tell the jury to ignore the

burden or that their job was to discern the truth." Br. of Resp't at 118. The codefendants' claims have merit.

¶40 The challenged closing argument is as follows:

[STATE]: [McCreven] and [Nolan], they want it both ways. Wasn't involved. But if you believe that [Ford] was involved then it was self-defense. Or defense of another. Well, which is it? Was [Ford] involved, or was he not involved? Was [Ford] involved in assaulting [Beaudine], and was that assault justified, justified because he was defending himself or defending another? Or did he just stand aside, as [Ford's counsel] would have you believe Mr. Ford did during the whole incident, stood by, and watched while other four men dressed in leathers, dressed in a Hidalgos jacket, dressed in yellow and gold, beat [Beaudine], jumped on a motorcycle, and fled the scene. You can't have it both ways. It doesn't work that way.

Why do I say that? Because the law says that you have to determine if you have an abiding belief in the truth of the charge. You have to do that. The truth, and what happened that night, truth in what each of these defendants did that night against Dana Beaudine.

And that word truth, it's not uttered because it sounds --

[McCREVEN]: I am going to object, Your Honor. This is not the law. The law is beyond a reasonable doubt, and only then if you have an abiding belief. I would object to her [mis]stating the law and shifting the burden.

THE COURT: My ruling is the jury has been instructed on the law of this case.

[STATE]: That word truth, it's in the instructions. The law that you have been given, and truth doesn't involve game play, or loopholes or trickery. It's the law.

21 RP at 2925-26.

■■ ¶41 " '[A] jury's job is not to "solve" a case. . . . Rather, the jury's duty is to determine whether the State has proved its allegations against a defendant beyond a reasonable doubt.' " *State v. Walker*, 164 Wn. App. 724, 733, 265 P.3d 191 (2011) (alterations in original) (quoting *State v. Anderson*, 153 Wn. App. 417, 429, 220 P.3d 1273 (2009),

*review denied*, 170 Wn.2d 1002 (2010)), *petition for review filed*, No. 86790-9 (Wash. Dec. 8, 2011). A prosecutor should not argue to the jury that it must "declare" or "decide" the truth. *Walker*, 164 Wn. App. at 733 (distinguishing *State v. Curtiss*, 161 Wn. App. 673, 701, 250 P.3d 496, *review denied*, 172 Wn.2d 1012 (2011), where the prosecutor asked the jury to " 'return a verdict that you know speaks the truth' "). Here, as in *Walker* and *Anderson*, the prosecutor improperly argued to the jurors that they must "determine if [they] have an abiding belief in the truth of the charge . . . truth in what each of these defendants did." 21 RP at 2925. The trial court erred in overruling the defense objection to the improper comment. *Gregory*, 158 Wn.2d at 809.

¶42 As to the "trickery" comment, our Supreme Court recently held that a prosecutor's comments implying "trickery or wrongdoing" by the defense "impermissibly impugned defense counsel and were improper." *Thorgerson*, 172 Wn.2d at 466. Here, although the codefendants did not object to the "trickery" comment, our review of the record suggests that such an objection was unlikely to succeed given the trial court's blanket overruling of all objections during closing argument. *Accord State v. Moen*, 129 Wn.2d 535, 547, 919 P.2d 69 (1996) (where no corrective purpose would be served by raising a proper objection at trial, the lack of objection should not preclude appellate review). Reviewing the "trickery" comment in the context of the entire case, where the prosecutor's improper comments impermissibly shifted the burden to prove self-defense, we cannot hold that the prosecutor's comment personally attacking defense counsel was not ill intentioned and did not cause, or at least add to, resulting prejudice. *Thorgerson*, 172 Wn.2d at 466; *Russell*, 125 Wn.2d at 86. Thus, the "trickery" comment was also improper.

¶43 Third, the codefendants argue that the prosecutor coached witnesses with improper and prejudicial annotated police reports. The State acknowledges its use of the annotated exhibits but argues that this was the result

of a mere miscommunication between the prosecutor and her co-counsel and not intentional misconduct. Although we hold there is no evidence to support a finding that the prosecutor coached the witnesses, the trial was extraordinarily contentious and we address this assignment of error to caution against the appearance of such annotated reports on retrial.

¶44 On May 4, 2009, McCreven alerted the trial court that four of the State's exhibits used to refresh witnesses' recollections were annotated with descriptions of the codefendants—some of which the witnesses had apparently read verbatim as answers during their testimony on direct examination. It appears the codefendants were unaware of the annotations, having reviewed their own copies that did not contain the deputy prosecutor's descriptive notations. The descriptive annotations were the prosecutor's own handwritten notes. The State apologized for what it said were "inadvertent" "commentaries" and agreed "[t]hey should have been redacted." 6 RP at 827, 831.

¶45 The codefendants moved to dismiss on grounds that the notations irrevocably tainted the trial and constituted prosecutorial misconduct. The State responded, arguing that the codefendants could not show prejudice because the State had not directed the first witness to the annotated pages; the second witness, despite seeing the improper annotations, denied recollection; the third witness had used her own copy of a report until the State showed her the annotated exhibit; and the fourth witness saw an annotated exhibit that reflected her own similar assailant numbering system as written in her report. The trial court found that the codefendants could not show actual prejudice and denied the motion.

¶46 ER 612 provides,

If a witness uses a writing to refresh memory for the purpose of testifying, either: while testifying, or before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing

produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

The trial court must ensure that (1) the witness's memory needs refreshing, (2) opposing counsel has the right to examine the writing, and (3) the trial court is satisfied that the witness is not being coached. *State v. Little*, 57 Wn.2d 516, 521, 358 P.2d 120 (1961). A witness is not "coached" if "the witness is using the notes to aid, and not to supplant, his own memory." *Little*, 57 Wn.2d at 521. It should not be necessary for us to state that an attorney, including a prosecutor, may not "coach" a witness, i.e., urge a witness to create testimony, under the guise of refreshing the witness's recollection under ER 612. *See State v. Delarosa-Flores*, 59 Wn. App. 514, 517, 799 P.2d 736 (1990), *review denied*, 116 Wn.2d 1010 (1991); *see also* RPC 3.4 cmt. 1 ("Fair competition in the adversary system is secured by prohibitions against . . . improperly influencing witnesses.").

¶47 Here, the codefendants' prosecutorial misconduct claim fails only because they cannot establish actual prejudice in the context of the entire record and trial. *Magers*, 164 Wn.2d at 191. Indeed, McCreven had argued to the trial court that the use of the annotated exhibits had *"potentially* influenced th[e] trial in ways that [the codefendants] *will never be able to discern."* 6 RP at 825 (emphasis added). Our review of the record shows that although the annotations were improper, and the State's "miscommunication" explanation inadequate, it does not appear that the annotated exhibits actually influenced witness testimony such that there is a "substantial likelihood" the jury's verdict was affected. *Magers*, 164 Wn.2d at 191. With the exception of one witness who denied recollection of any fact, the remaining three witnesses appear to have testified at trial consistently with their previous statements or reports. Accordingly, in the absence of demonstrated prejudice, the use of the annotated exhibits is not reversible error and the trial court did not abuse its discretion by denying the motion to

dismiss based on misconduct. *Gregory*, 158 Wn.2d at 809; *State v. Gary J.E.*, 99 Wn. App. 258, 261, 991 P.2d 1220 (we review a trial court's denial of a motion to dismiss for manifest abuse of discretion), *review denied*, 141 Wn.2d 1020 (2000).

## SUFFICIENCY OF THE EVIDENCE

¶48 Next, McCreven, Ford, and Smith[9] challenge the sufficiency of the evidence supporting the jury's verdicts finding them guilty of second degree murder. They argue there was no evidence presented at trial that they participated or assisted in the fight either as a principal or as an accomplice. We disagree.

¶49 The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the jury's verdict, any rational jury could find the essential elements of a crime beyond a reasonable doubt. *State v. Johnson*, 159 Wn. App. 766, 774, 247 P.3d 11 (2011) (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). All reasonable inferences from the evidence must be drawn in favor of the jury's verdict and interpreted strongly against the defendant. *Johnson*, 159 Wn. App. at 774 (citing *Salinas*, 119 Wn.2d at 201). " 'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn' " from it. *Johnson*, 159 Wn. App. at 774 (quoting *Salinas*, 119 Wn.2d at 201).

¶50 In applying this standard to review the record, circumstantial evidence is no less reliable than direct evidence and " 'specific criminal intent of the accused may be inferred from the conduct where it is plainly indicated as a matter of logical probability.' " *Johnson*, 159 Wn. App. at 774 (quoting *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980)). The jury is the sole and exclusive judge of

---

[9] Smith challenges the sufficiency of the evidence in his SAG. For continuity and clarity, Smith's sufficiency of the evidence claim will be addressed here.

the evidence. *Johnson*, 159 Wn. App. at 774 (citing *State v. Bencivenga*, 137 Wn.2d 703, 709, 974 P.2d 832 (1999)). Our role is not to reweigh the evidence and substitute our judgment for that of the jury. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Instead, because they observed the witnesses testify firsthand, we defer to the jury's resolution of conflicting testimony, evaluation of witness credibility, and decisions regarding the persuasiveness and the appropriate weight to be given the evidence. *See State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).

¶51 To convict a defendant of second degree felony murder, the State must prove beyond a reasonable doubt that they, or an accomplice, (1) committed or attempted to commit (2) a felony, (3) "and, in the course of and in furtherance of" committing that felony, (4) caused Beaudine's death. RCW 9A.32.050(1)(b). Because the alleged predicate felony here is second degree assault, the State must also prove beyond a reasonable doubt that Ford, Smith, or McCreven, or an accomplice, intentionally assaulted Beaudine and thereby recklessly inflicted substantial bodily harm, or assaulted Beaudine with a deadly weapon. RCW 9A.36.021(1)(a), (c). A person acts intentionally when he acts "with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a).

¶52 To convict Ford, Smith, or McCreven as an accomplice to second degree felony murder, the State must prove beyond a reasonable doubt that Ford, Smith, or McCreven, with knowledge that it would promote or facilitate the commission of the second degree assault that resulted in Beaudine's death, (1) solicited, commanded, encouraged, or requested another person to commit the crime or (2) aided or agreed to aid another person in planning or committing the crime. RCW 9A.08.020. Accomplice liability requires an overt act. *State v. Matthews*, 28 Wn. App. 198, 203, 624 P.2d 720 (1981). Mere presence is

insufficient to prove complicity in a crime. *State v. Roberts,* 80 Wn. App. 342, 355-56, 908 P.2d 892 (1996). An accused who is alleged to be an accomplice to a second degree assault must have known generally that he was facilitating an assault but need not have known that the principal was going to use deadly force or that the principal was armed. *In re Pers. Restraint of Sarausad,* 109 Wn. App. 824, 836, 39 P.3d 308 (2001).

### A. Ford

¶53 Ford asserts that insufficient evidence supports the jury's verdict finding that he was either a principal in the fight or that he was involved in the fight in a manner that made him liable as an accomplice to others' assault on Beaudine. Specifically, Ford argues that the evidence does not support the State's theory that he "was the man who put his hand up and spoke to" James to keep him from assisting Beaudine. Br. of Appellant (Ford) at 19. Alternatively, Ford argues that even if he was the man who stopped James from reentering the fight, that act, with nothing more, was insufficient to support the jury finding him guilty as an accomplice of the assault others committed on Beaudine. We disagree.

¶54 Ford is a 5'10" white male, weighs 235 pounds, and has partially gray hair and blue eyes. At trial, Garry Howden, the Bull's Eye's DJ, testified that "a big guy" wearing a dark, possibly leather, jacket and "might have had a crewcut," "put his hand out" to warn James to stay out of the fight. 2 RP at 208-10. Shannon Ford, Beaudine's fiancée, testified that she saw Ford making or receiving a cell phone call earlier inside the tavern. Shannon Ford testified that Ford wore "gray-type denim pants and a sweater, long sleeved," had a shorter, "military" haircut, and looked "more clean cut than the rest of the men." 8 RP at 1009-10. Shannon Ford also testified that the second man to approach Beaudine during the fight wore a gray shirt and gray jeans and identified him as the man she had seen inside the bar making or receiving a phone call.

¶55 Reviewing the evidence and reasonable inferences in the light most favorable to the jury's verdict, any rational trier of fact could have found Ford guilty as an accomplice to the assault-based murder of Beaudine. *Salinas*, 119 Wn.2d at 201. Sufficient evidence supports a jury finding that Ford was the man who held his hand up to prevent James from coming to Beaudine's rescue—an overt act which aided and assisted others by allowing them to continue their assault on Beaudine unimpeded. *Matthews*, 28 Wn. App. at 203. Although the jury was presented with conflicting trial testimony as to what the men in the fight wore and where each of the codefendants stood during the fight, it is not our place as a reviewing court to reweigh the evidence or to substitute our judgment for that of the jury. *Green*, 94 Wn.2d at 221. The 12 jurors who heard the witnesses testify and saw the codefendants described were in a better position to resolve any conflicts in the testimony. *Walton*, 64 Wn. App. at 415-16.

## B. McCREVEN

¶56 McCreven asserts that there is no "legitimate untainted evidence" proving that he was an accomplice to the assault beyond his presence at the Bull's Eye on the night of the incident. Br. of Appellant (McCreven) at 106. McCreven argues that because no witness identified him as involved in the fight, the evidence is insufficient to support the jury's verdict finding him guilty of second degree felony murder by assault. McCreven alleges that the State, "in an effort to overcome the lack of evidence of McCreven's guilt," presented "baseless speculation" as to his allegedly bloody chaps or missing Hidalgos-patched motorcycle jacket. Br. of Appellant (McCreven) at 109. Our review of the record does not support this claim.

¶57 McCreven is a 5'7" white male, weighs 140 pounds, and has "sandy blondish, red hair." 10 RP at 1424. At trial, Rebecca Dobiash, McCreven's fiancée, testified that he left their house on a motorcycle on the night of the incident

wearing leather chaps over his jeans, a plain, long-sleeved leather jacket, a vest with a Hidalgos patch over the jacket, and a red bandana. Dobiash, who had worked as a nurse for 25 years, further testified that McCreven returned home with "[a] smear on the side of his chaps" near his thigh that "appeared to be blood." 11 RP at 1468. Dobiash testified that McCreven had explained there was a fight at the tavern and told her that a "guy had a little cut on his head." 11 RP at 1469.

¶58 Other witnesses testified that a shorter man wearing Hidalgos insignia was involved in the fight. Shannon Ford testified that a "smaller" man in the fight wore what she described as a skull cap, suggesting McCreven's height and clothing. Shannon Ford also testified that she saw McCreven leave the parking lot on his motorcycle after the fight ended. Howden described one of the men in the fight as having "curly blond hair" and being "a little shorter" than the others. 2 RP at 208. Howden also testified that all the men in the fight, other than Beaudine and Smith, wore "biker jackets" or "leather jackets" with red and gold Hidalgos patches on the back. 2 RP at 212.

¶59 Reviewing the evidence in the light most favorable to the jury's verdict, we hold that the evidence was sufficient to allow any rational jury to find McCreven guilty of second degree felony murder based on the predicate felony of second degree assault. *Johnson*, 159 Wn. App. at 774 (citing *Salinas*, 119 Wn.2d at 201). As a matter of law, circumstantial evidence is no less reliable than direct evidence. *Johnson*, 159 Wn. App. at 774 (quoting *Delmarter*, 94 Wn.2d at 638). Although McCreven argues on appeal that he was the "short, skinny guy" that Joy Hutt, the tavern's bartender, testified she saw smoking with Ford on the sidewalk immediately after the fight, as a reviewing court we are not able to determine witness credibility, reweigh the evidence, or supplant our judgment for that of the jury. 18 RP at 2546; *Green*, 94 Wn.2d at 221; *Walton*, 64 Wn. App. at 415-16.

## C. SMITH

¶60 Smith does not challenge the sufficiency of the evidence proving assault or that the assault resulted in Beaudine's death. Instead, Smith appears to challenge the sufficiency of the evidence disproving his claim of self-defense. Assuming, without deciding, that addressing the sufficiency of the evidence disproving self-defense is required, Smith's claim fails.

¶61 One witness testified that Smith started the fight by walking up to Beaudine with "his fist cocked back." 8 RP at 1022. Witnesses also testified that Beaudine was being held by some of the codefendants while he was being hit. As a reviewing court we are not able to determine witness credibility, reweigh the evidence, or supplant our judgment for that of the jury. *Green*, 94 Wn.2d at 221; *Walton*, 64 Wn. App. at 415-16. Therefore, the evidence was sufficient to prove that Smith was not acting in self-defense.

¶62 Smith also attempts to introduce evidence outside the record to prove he acted in self-defense. A personal restraint petition is the proper means to introduce evidence outside the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Accordingly, Smith's sufficiency of the evidence claim fails.

### JUROR MISCONDUCT

¶63 Last, the codefendants assert that the trial court abused its discretion by failing to dismiss two jurors who discussed with other jurors their belief that Reyna Blair, James's girlfriend, either did not testify truthfully or was afraid to testify. Because we reverse the codefendants' convictions on other grounds, we do not address the merits of the parties' arguments on this issue. However, although this issue is unlikely to occur on remand, we note that it appears the trial court engaged in the wrong inquiry after being notified of the potential juror misconduct.

¶64 One of the jurors notified the trial court that other jurors had discussed witness Blair's demeanor and attitude before deliberations began. The trial court interviewed the jurors privately and found they could continue to listen to testimony fairly and impartially.[10] RCW 2.36-.110. We emphasize that the correct inquiry when jurors have been found to have violated their oath—as here, by discussing the evidence before deliberation in violation of the trial court's instructions—is not whether the jurors can fairly weigh the evidence but whether the jurors are able to adhere to their oath in the future.[11] CrR 6.6.

SAG—Smith

¶65 In his SAG, Smith asserts that his trial counsel, Michael Schwartz, was ineffective for failing to present an insanity defense or moving to find Smith incompetent to stand trial. Smith asserts that at his arraignment hearing, he told Schwartz he had a history of mental health issues and received disability payments for mental-health-related issues. Smith also asserts that Schwartz prevented him from testifying at trial. Smith's claim is meritless.

¶66 To establish ineffective assistance of counsel, Smith must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *McFarland*, 127 Wn.2d at 334-35.

---

[10] RCW 2.36.110 governs the dismissal of an unfit juror:

It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

[11] Before being seated, each juror took the following oath: "You, and each of you, do solemnly swear or affirm that you will fairly try the issues in these cases . . . and reach a true verdict according to the evidence and the instructions of the court." 1 RP at 21-22. The trial court then instructed the jury, "[U]ntil you are in the jury room for . . . deliberations, you must not discuss these cases with the other jurors, or with anyone else, or remain within hearing of anyone discussing it." 1 RP at 24.

Counsel's performance is deficient when it falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). Prejudice would occur here if, but for his counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *McFarland*, 127 Wn.2d at 335 (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Thomas*, 109 Wn.2d at 226 (emphasis omitted) (quoting *Strickland*, 466 U.S. at 694). When counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient. *Kyllo*, 166 Wn.2d at 863 (citing *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996); *McFarland*, 127 Wn.2d at 336).

¶67 Here, after his conviction, the trial court appointed Smith new counsel and ordered that Smith undergo a competency evaluation before sentencing. Western State Hospital staff evaluated Smith while he was in jail and reported their findings to the trial court. The trial court then found Smith competent to stand further court proceedings.

¶68 On December 11, 2009, the trial court heard Schwartz's testimony regarding Smith's claim that he should have asserted an insanity or diminished capacity defense at trial.[12] Schwartz testified he had discussed raising a diminished capacity defense with Smith and determined that Smith's mental health history failed to support the defense. Schwartz also testified he never had concerns for Smith's competency to stand trial because Smith understood "the nature of the proceedings against him" and was able to assist in his defense. RP (Dec. 11,

---

[12] After his conviction, Smith submitted several handwritten "motions" to the trial court for arrest of judgment or for new trial, asserting that the State had failed to prove he acted with the requisite intent to commit second degree felony murder and challenging his counsel's performance. The superior court clerk had initially rejected the ex parte communications for consideration.

2009) at 15. As to testifying at trial, Schwartz testified that Smith "made his decision very clear to me. I mean, he told me directly he did not want to testify." RP (Dec. 11, 2009) at 24.

¶69 Under these circumstances, we hold that Schwartz's performance was not deficient. The evidence did not support a not guilty by reason of insanity plea and there was not a sufficient basis on which to move to find Smith incompetent to stand trial.[13] *Stenson*, 132 Wn.2d at 705. Nothing in the record supports Smith's assertion that he was incompetent to stand trial or that his history of mental health issues supported an insanity or diminished capacity defense.[14] Schwartz performed reasonably, and Smith's claim fails.

SAG—McCREVEN

¶70 In his SAG, McCreven challenges the trial court's accomplice liability jury instruction and argues that his trial counsel was ineffective for failing to object to that instruction.[15] Specifically, McCreven contends that Washington's complicity statute, RCW 9A.08.020, is unconstitutionally overbroad. We recently rejected an identical argument in *State v. Ferguson*, 164 Wn App. 370, 264 P.3d 575

---

[13] *See State v. Crenshaw*, 98 Wn.2d 789, 793, 659 P.2d 488 (1983) ("The insanity defense is not available to all who are mentally deficient or deranged. . . . '[T]he defense is available only to those persons who have lost contact with reality so completely that they are beyond any of the influences of the criminal law.'" (quoting *State v. White*, 60 Wn.2d 551, 590, 374 P.2d 942 (1962), *cert. denied*, 375 U.S. 883 (1963))).

[14] *See State v. Gough*, 53 Wn. App. 619, 622, 768 P.2d 1028 (Diminished capacity arises out of a mental disorder that renders a defendant incapable of having the required level of culpability; mere existence of a mental disorder is not enough. (citing *State v. Ferrick*, 81 Wn.2d 942, 944, 506 P.2d 860, *cert. denied*, 414 U.S. 1094 (1973))), *review denied*, 112 Wn.2d 1026 (1989).

[15] McCreven also argues that insufficient evidence supports the jury's verdict finding him guilty of second degree felony murder and that his trial counsel was ineffective for failing to move for a mistrial. We have already addressed the sufficiency of the evidence supporting McCreven's conviction. Because we reverse McCreven's conviction on other grounds, we do not address his ineffective assistance claim any further.

(2011), *review denied*, 173 Wn.2d 1035 (2012), and likewise hold here that the accomplice liability instruction given was proper and that RCW 9A.08.020 is not unconstitutionally overbroad.

■■■ ¶71 Next, McCreven challenges the admission of his "booking photo" as a violation of his right to be presumed innocent. During trial, McCreven objected to the admission of a photographic montage depicting him in gray jail clothes. The trial court found that the jury would not recognize the jail clothes and admitted the montage. A booking photograph is not necessarily prejudicial. *See, e.g.,* *State v. Rivers*, 129 Wn.2d 697, 712, 921 P.2d 495 (1996). The trial court did not abuse its discretion in admitting the photographic montage. *Rivers*, 129 Wn.2d at 712.

¶72 In accord with our foregoing analysis, we reverse the codefendants' convictions, vacate their sentences, and remand for new trial. Because legally sufficient evidence supports the jury verdicts, double jeopardy does not bar retrial. *See State v. Hescock*, 98 Wn. App. 600, 611, 989 P.2d 1251 (1999) (citing *Burks v. United States*, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)).

ARMSTRONG and PENOYAR, JJ., concur.

Review denied at 176 Wn.2d 1015 (2013).