FILED
COURT OF APPEALS
DIVISION II

2014 APR 29 AM 8: 43

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43816-0-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| DAMON C. McGRAW, | |
| Appellant. | |

BJORGEN, J. — A jury returned verdicts finding Damon C. McGraw guilty of witness intimidation and felony harassment. The jury also returned a special verdict finding the aggravating factor that McGraw committed witness intimidation against a law enforcement officer while the officer was performing his official duties. McGraw appeals his convictions, asserting that the trial court erred by admitting his post-arrest statements at trial. Because the trial court erred by admitting prejudicial propensity evidence contrary to ER 404(b), we reverse McGraw's convictions and remand for a new trial.

## FACTS

On the morning of December 15, 2011, Pierce County Sheriff's Deputy Seth Huber went to the Pierce County Superior Court to testify at a hearing at which McGraw was appearing as a defendant. Huber arrived in the courtroom before the scheduled hearing, sat in the front row, and began talking with Deputy Prosecutor Mark Sanchez. The Honorable Judge Ronald Culpepper, his judicial assistant, and a court reporter were also present in the courtroom. McGraw entered the courtroom while Huber was taking his seat. When McGraw walked past Huber, Huber heard McGraw mumble something. McGraw sat in the defendant's chair, turned his chair to face Huber, and began staring at him. McGraw then stood up and walked back out of the courtroom. As McGraw passed Huber, Huber heard McGraw mumble something that included the phrase "fuck you." Report of Proceedings (RP) at 14. Huber stated that before exiting the courtroom, McGraw "turned around and made a configuration with his hand of a gun pointed at me, and made a shooting motion." RP at 14. Huber also stated that after McGraw exited the courtroom, McGraw looked at him through a diamond-shaped window on the exit door and made a "knifing motion to his throat." RP at 15. Huber further stated that he heard McGraw tell him, "You are a fucking dead man," and that McGraw threatened to kill Huber's family. RP at 15. Huber reported the incident to court security. McGraw was arrested after his hearing concluded.

No. 43816-0-II

On December 16, 2011, the State charged McGraw with witness intimidation[1] and felony

harassment.[2] The State also alleged the aggravating factors that McGraw committed his crimes

---

[1] RCW 9A.72.110(1)(a), the statutory provision under which the State charged McGraw, provides, "A person is guilty of intimidating a witness if a person, by use of a threat against a current or prospective witness, attempts to . . . [i]nfluence the testimony of that person."

[2] RCW 9A.46.020(1) provides:
> (1) A person is guilty of harassment if:
>   (a) Without lawful authority, the person knowingly threatens:
>     (i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or
>     (ii) To cause physical damage to the property of a person other than the actor; or
>     (iii) To subject the person threatened or any other person to physical confinement or restraint; or
>     (iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and
>   (b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out. "Words or conduct" includes, in addition to any other form of communication or conduct, the sending of an electronic communication.

Additionally, RCW 9A.46.020(2)(b) provides that harassment is a felony offense where:

> (i) The person has previously been convicted in this or any other state of any crime of harassment, as defined in RCW 9A.46.060, of the same victim or members of the victim's family or household or any person specifically named in a no-contact or no-harassment order; (ii) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person; (iii) the person harasses a criminal justice participant who is performing his or her official duties at the time the threat is made; or (iv) the person harasses a criminal justice participant because of an action taken or decision made by the criminal justice participant during the performance of his or her official duties. For the purposes of (b)(iii) and (iv) of this subsection, the fear from the threat must be a fear that a reasonable criminal justice participant would have under all the circumstances. Threatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have the present and future ability to carry out the threat.

3

against a criminal justice participant while performing official duties.

Before the start of McGraw's trial, the trial court asked counsel whether it needed to conduct a CrR 3.5 hearing. The State told the trial court that a CrR 3.5 hearing was unnecessary because the State was not seeking to admit any of McGraw's custodial statements. At trial, Huber testified consistently with the facts as stated above. Sanchez testified that he saw McGraw stare at Huber and heard McGraw say, "You're dead. You're dead," from outside of the courtroom; Sanchez did not see McGraw make any threatening gestures. RP at 42, 44, 58.

Judge Culpepper testified that he did not see McGraw make any threats or threatening gestures on the date of the incident. Judge Culpepper's judicial assistant, Angela Edwards, and McGraw's former defense counsel, Vera Jean, similarly testified that they did not see McGraw make any threats or threatening gestures on the date of the incident.

Before the State called Pierce County Sheriff's Deputy Ronald Carter to testify, defense counsel raised an issue with the proposed testimony, and the following discussion took place:

> [Defense counsel]: I believe that the State is going to call Officer Carter to discuss what occurred after [McGraw] was arrested, long after the video, what occurred long after the hearing when they came in and arrested Mr. McGraw. I think that's highly prejudicial. I don't think it shows anything of relevance. I mean, we've seen everything that there is to see as far as what's relevant to the case. So, again—
> [Trial court]: Is that a part of any element that you have to prove, given the fact that—
> [State]: It shows the Defendant's anger and animosity towards law enforcement. It's less than an hour after the threats were made. It goes to his state of mind. I do believe that that will show credibility as to he was making the threats before, and as soon as the officers made contact again he picked right back up. They were mostly insulting rather than, you know, threatening to kill but his animosity toward law enforcement was very clear and it is close in time, it's the same incident, and occurred right after the hearing concluded.
>
> . . .
>
> [Defense counsel]: Again, here we're talking about something that it's almost like saying because he behaved this way an hour afterwards he must have

been doing what we say he was doing at the time of the particular incident. I find that to be, again, highly prejudicial like I indicated already. I don't believe it's relevant, and if that was going to be a relevant issue it's something that should have been briefed. We should have had more time to discuss that particular issue. That wasn't done, and I think at this stage of the game it's really not probative of anything. It's more prejudicial than probative.

[Trial court]: Well, I tend to disagree in the sense that the close proximity in time does make it more germane than it probably would have been had it been the next day or a week later, but because of the close proximity in time I think it is relevant.

RP at 66-67.

Following this discussion, Carter testified that when he arrested McGraw, McGraw made disparaging remarks toward him and the other arresting officers. When the State asked Carter to relay McGraw's disparaging remarks, defense counsel objected, stating, "[T]here has been no foundation laid with respect to whether or not this was before [McGraw] was advised of his rights of what the situation was." RP at 70-71. The trial court overruled defense counsel's objection, stating that it was an issue for cross-examination. Carter then testified that McGraw called the arresting officers "pigs" and "white devils." RP at 71. Carter further testified that, while officers were escorting McGraw to jail, McGraw told the officers that they "should all be killed." RP at 75. Defense counsel again objected and the trial court overruled the objection. Pierce County Sheriff's Deputy Jesus Villahermosa similarly testified that McGraw had stated that the officers were racist and that they "should all be dead." RP at 79-80.

The jury returned verdicts finding McGraw guilty of witness intimidation and felony harassment and returned a special verdict finding that McGraw committed witness intimidation against a law enforcement officer while the officer was performing official duties. McGraw timely appeals his convictions.

5

No. 43816-0-II

## ANALYSIS

### I. OTHER ACTS EVIDENCE - ER 404(B)

McGraw contends that the trial court abused its discretion by allowing the State to elicit testimony regarding his post-arrest statements to Carter and Villahermosa. Because evidence of McGraw's statements to the arresting officers was highly prejudicial character evidence that was inadmissible under ER 404(b), we reverse McGraw's convictions and remand for a new trial.

We review a trial court's decision to admit evidence subject to ER 404(b) for an abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). Evidence of a person's other acts is never admissible to prove the character of the person to show that he acted in conformity with his character on a specific occasion. ER 404(b). However, such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b).

Before admitting evidence of the defendant's other acts, the trial court must (1) find by a preponderance of the evidence that the other acts occurred, (2) identify the purpose for which the evidence will be admitted, (3) determine that the evidence is relevant to prove an element of a charged crime, and (4) weigh the probative value of the evidence against the danger of unfair prejudice. *State v. Kilgore*, 147 Wn.2d 288, 292, 53 P.3d 974 (2002). Generally, the trial court must conduct this analysis on the record. *State v. McCreven*, 170 Wn. App. 444, 458, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015, 297 P.3d 708 (2013).

As an initial matter, the State's response brief fails to respond to any of McGraw's arguments regarding ER 404(b), instead asserting that the evidence was admissible because it was relevant under ER 401 and not unduly prejudicial under ER 403. To the extent that the State

6

ignores McGraw's ER 404(b) claim because it believes McGraw has not preserved his challenge on this ground for failing to reference ER 404(b) when objecting at trial, it is incorrect. Our Supreme Court has held that a nonspecific objection based on "prejudice" will preserve an ER 404(b) challenge for appeal "because it suggests the defendant was prejudiced by the admission of [other acts evidence]." *State v. Mason*, 160 Wn.2d 910, 933, 162 P.3d 396 (2007). Here, McGraw clearly and repeatedly objected to the admission of his post-arrest statements on the basis that the evidence was prejudicial. Accordingly, his claim that the trial court admitted evidence of his other acts in violation of ER 404(b) is preserved for our review.

Although the trial court did not conduct an ER 404(b) analysis on the record before admitting evidence of McGraw's statements to arresting officers, the record demonstrates that the State sought admission of the evidence to show McGraw's "anger and . . . animosity toward law enforcement," thus making Huber's accusations that McGraw threatened him more credible.[3] RP at 66. Put simply, the State's purpose in seeking the admission of the evidence was (1) to show McGraw's character was one of animosity against law enforcement officers, and (2) to show that McGraw acted in conformity with his character when he threatened Huber. However, ER 404(b) was designed "to prevent the State from suggesting that a defendant is guilty because he or she is a criminal-type person who would be likely to commit the crime charged." *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007). Because the State

---

[3] On appeal, the State similarly argues that evidence of McGraw's "derogatory and inappropriate statements at the time of arrest tend to demonstrate his perception and beliefs as they relate to law enforcement officers." Br. of Resp't at 8.

sought evidence of McGraw's post-arrest statements for this very purpose, the trial court erred by admitting it.

## II. THE ERROR WAS NOT HARMLESS

The State argues that even if the trial court erred by admitting evidence of McGraw's post-arrest statements through the testimony of Carter, any error was harmless because McGraw failed to object to Villahermosa's similar, but not identical testimony. Although defense counsel did not again object to the State's presentation of other acts evidence during Villahermosa's testimony, we do not hold that he thereby failed to preserve this error for appeal. Defense counsel made it clear to the trial court prior to either of the officer's testimony that he was seeking exclusion of McGraw's post-arrest statements on the basis that such evidence was highly prejudicial. Moreover, Villahermosa's testimony occurred directly after Carter's testimony, during which the trial court overruled defense counsel's repeated objections. Under these circumstances, defense counsel could have deemed it futile to object again on grounds that the trial court rejected just moments before. *See, e.g., State v. Cantabrana*, 83 Wn. App. 204, 208-09, 921 P.2d 572 (1996) (failure to properly object may be excused where it would have been a useless endeavor). The defense's objection to McGraw's post-arrest statements extended to Villahermosa's testimony.

## CONCLUSION

Evidence that McGraw called officers "pigs" and "white devils," and that all officers should be killed was clearly prejudicial and the State failed to offer any legitimate purpose for the admission of the evidence. Instead, the State essentially argued for the admission of McGraw's post-arrest statements to show his propensity for threatening law enforcement

officers, a purpose prohibited by ER 404(b). Because we reverse McGraw's conviction on the ground that his post-arrest statements were inadmissible under ER 404(b), we do not address whether the trial court erred by admitting the statements without first conducting a CrR 3.5 hearing. We reverse McGraw's convictions and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

HUNT, J.

MAXA, J.