FILED
COURT OF APPEALS
DIVISION II

2014 OCT 21 AM 9: 14

STATE OF WASHINGTON
BY_____
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44573-5-II |
| Respondent, | |
| v. | |
| JOHN EVAN GRIFFITHS, JR., | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — John Evan Griffiths, Jr. appeals his second degree assault conviction,

claiming that the trial court violated his federal and state constitutional protections against

double jeopardy by holding a second trial after the first ended with a mistrial and that his right to

effective assistance of counsel was violated when defense counsel failed to object to an

erroneous self-defense instruction. We hold that retrying Griffiths following a mistrial did not

violate double jeopardy protections, but that defense counsel's failure to object to the obviously

defective self-defense instruction was deficient and prejudicial. Accordingly, we reverse and

remand for a new trial.[1]

FACTS

There are several versions of the facts but the witnesses all agreed that on April 21, 2012,

Griffiths confronted Michael Kang in the Olympia Capital Mall parking lot. Three witnesses –

---

[1] Griffiths also argues that defense counsel was ineffective for not objecting to a first aggressor
jury instruction, which stated that a defendant cannot rely on self-defense if he was the aggressor
in a fight. He further argues that the cumulative effect of errors denied him the right to a fair
trial. Because we reverse based on the defective self-defense instruction, we do not address
these issues.

Rachel Hendrickson, Laura Fletcher and Kang – testified that Kang's car was parked in the lot when Griffiths, who was driving a dark green SUV (sport utility vehicle), screeched to a stop, jumped out of his car with a tire iron in his hand, yelled profanities at Kang, and approached Kang's car. They testified that when Kang got out of his car, Griffiths grabbed him by the throat, raised the tire iron above his head, and threatened to kill him.

Griffiths testified that as he was proceeding through a four-way stop intersection at the mall, Kang's vehicle was speeding, did not stop, and nearly struck his jeep. Moments later, as he was waiting with his blinker on to enter a parking space, Kang allegedly came the wrong way down a one-way parking row and took the spot before Griffiths had a chance to pull in. Griffiths testified that he felt that he "had a civil duty to at least speak with the young man driving the way he was." Report of Proceedings (RP) (Jan. 7, 2013) at 185-86. He admitted taking a tire iron with him because he was concerned for his safety and the safety of his children who were in the jeep.

Griffiths further testified that (1) Kang got out of his car and got into Griffiths' face and was squaring off as if to fight, (2) he then noticed that Kang was forming a fist behind his back and bringing his shoulder forward as if to strike, and (3) at that moment Griffiths put his arm up to protect himself and grabbed Kang's shirt. Griffiths denied that he choked Kang or put his hand on Kang's throat. When he saw four men coming from the mall to help Kang, Griffiths got into his jeep and drove off.

Kelli Phelps testified that Kang was driving well over the 15 miles per hour speed limit and that she saw the confrontation between Kang and Griffiths as she was walking through the parking lot. She said that Griffiths was angry as he approached Kang's car, yelled at Kang to

2

slow down, and yelled that he had his kids in the car. Kang responded by telling Griffiths to "F" off. Griffiths then responded, "Do you want to come out here and say that?" RP (Jan. 8, 2013) at 254. Phelps testified that when Kang got out of the car, Griffiths approached with the tire iron in one hand and pushed Kang into the space between Kang's car and door. She testified that she never saw Griffiths choke Kang but saw him use a flat hand on Kang's upper chest. According to Phelps, Griffiths told Kang that he would kill him if Kang ever did that again.

The State charged Griffiths with second degree assault while armed with a deadly weapon and harassment. The jury returned a not guilty verdict on the harassment count but could not reach a verdict as to the assault and the trial court declared a mistrial as to the assault. At the second trial on the assault charge, the trial court gave a self-defense instruction. Although the second paragraph of this instruction was erroneous, Griffiths' counsel did not object to the instruction.

The jury found Griffiths guilty and found that he was armed with a deadly weapon. Griffiths appeals.

ANALYSIS

A. DOUBLE JEOPARDY

In a Statement of Additional Grounds, Griffiths argues that all charges must be dismissed because the trial court violated the proscription against double jeopardy by trying him again after his first trial ended in a mistrial due to a hung jury. He argues that the second trial violated the Fifth Amendment to the federal constitution and article 1, section 2 of the state constitution. We disagree.

It is well settled that there is no double jeopardy violation when a defendant is tried a second time after a jury fails to reach a verdict in the first trial, as long as the deadlock is genuine. *State v. Daniels*, 165 Wn.2d 627, 644, 200 P.3d 711 (2009). Here, it was undisputed that the jury could not reach a verdict and therefore the trial court declared a mistrial. We hold that retrying Griffiths did not offend double jeopardy protections.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Griffiths argues that he was denied his right to effective assistance of counsel because trial counsel did not object to the erroneous self-defense instruction. We agree.

### 1. Legal Principles

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 34. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Grier*, 171 Wn.2d at 34. Reasonable probability in this context means a probability sufficient to undermine confidence of the outcome. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012).

### 2. Self-Defense Instruction

The trial court gave a self-defense instruction, instruction 14, which provided in part:

> It is a defense to the charge of Assault in the Second Degree that the force used or attempted or offered to be used was lawful as defined in this instruction.

4

The use of or attempt to use or offer to use force upon or toward the person of another is lawful when used or attempted or offered by a person who reasonably believes that he is about to be injured *by someone lawfully aiding a person who he reasonably believes is about to be injured* in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.

The person using or offering to use the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

The State has the burden of proving beyond a reasonable doubt that the force used or attempted or offered to be used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to Assault in the Second Degree.

Amended Clerk's Papers (ACP) at 74 (emphasis added).

Instruction 14 tracks the language of WPIC 17.02. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.02, at 253 (3d ed. 2008). But the italicized phrase in the above quote is in brackets in WPIC 17.02 and should have been removed from instruction 14. Because the phrase was not removed, the instruction states that force is lawful only if a person [person 1] believes he is about to be injured by someone [person 2] aiding another person [person 3] who "he" [could refer to either person 1 or person 2] believes is about to be injured. This sentence makes no sense. Griffiths argues, and the State correctly concedes, that the second paragraph of this instruction is unintelligible and confusing.

3. Deficient Representation and Prejudice

The State does not seriously contend that defense counsel was not deficient in failing to object to the obviously defective self-defense instruction. The State points out that the judge and the prosecutor also failed to notice that the instruction was improper, but that does not excuse defense counsel's failure to identify the problem and object. We agree that Griffith's counsel

5

was deficient for failing to object to this instruction. The question is whether this deficiency prejudiced Griffiths.

Regarding prejudice, jury instructions on self-defense must more than adequately convey the law. *State v. McCreven*, 170 Wn. App. 444, 462, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015 (2013). Read as a whole, the jury instructions must make the relevant legal standard manifestly apparent to the average juror. *McCreven*, 170 Wn. App. at 462.

Here, the second paragraph of the self-defense instruction is gibberish. And to the extent it can be understood, it misstates the relevant legal standard. The jury was instructed that Griffiths could claim self-defense only if he was about to be injured by someone lawfully aiding a person about to be injured. In fact, the law allows a defendant to claim self-defense if he is about to be injured by anyone. RCW 9A.16.020(3); *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). As a result, if the jury applied the instruction as written, Griffiths was precluded from claiming self-defense. Instruction 14 misstated the law and necessarily prejudiced Griffiths.

The State argues that giving the erroneous instruction was harmless because although one paragraph of the self-defense instruction is difficult to understand, the remaining portion of instruction 14 clearly explained self-defense and instructions 15 and 17 also helped to clarify any confusion. We disagree.

The third paragraph of instruction 14 properly stated the law regarding the amount of force a person can use in self-defense. But that paragraph did not address when it is lawful to use *any* force, the subject of the erroneous second paragraph. The fourth paragraph of instruction 14

properly states that it is the State's burden to prove that the force Griffiths used was unlawful, but again does not address when force is lawful – the subject of the erroneous second paragraph.

Instruction 15 explains that a person must only reasonably believe that he is in actual danger of injury to claim self-defense. The instruction states:

> A person is entitled to act on appearances in defending himself if he believes in good faith and on reasonable grounds that he is in actual danger of injury, although afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

ACP at 75. Instruction 17 properly states circumstances under which force can be lawful. The instruction states:

> It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force. The law does not impose a duty to retreat.

ACP at 77. But these instructions do not clarify the incorrect statement in instruction 14 that self-defense applies only to a threat from someone lawfully aiding a person about to be injured. Further, instruction 14 states that self-defense is available if the defendant's use of force was lawful "as defined in this instruction." ACP at 74. This language did not allow the jury to look to instructions 15 or 17 in determining whether Griffiths' use of force was lawful.

Instruction 14 misstated the law. Under the erroneous language of that instruction, the jury could not have found that Griffiths acted in self-defense. As a result, the defective instruction prevented Griffiths from arguing his theory of the case. *See State v. Davis*, 174 Wn. App. 623, 638, 300 P.3d 465, 472, *review denied*, 178 Wn.2d 1012 (2013) (jury instructions are proper when, taken as a whole, they set out the applicable law and allow the parties to argue their theories of the case).

We hold that defense counsel's failure to object to instruction 14 was deficient and prejudiced Griffiths. Accordingly, we reverse Griffiths' conviction and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

LEE, J.