# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 72732-0-I |
| Respondent, | |
| v. | DIVISION ONE |
| JAMES ALLEN SWEET, | UNPUBLISHED OPINION |
| Appellant. | FILED: January 19, 2016 |

LEACH, J. — James Sweet appeals his conviction for assault in the first degree with a deadly weapon enhancement. He contends the prosecutor's closing argument that shifted the State's burden constituted misconduct violating his right to a fair trial. And he alleges that his counsel was ineffective for failing to object to this argument. Because Sweet does not show prejudice from either the prosecutor's comments or defense counsel's failure to object to them, we affirm.

## Background

In August 2013, James Sweet, 21, began corresponding on social media and via text message with Heather Brickell. The night before Brickell's eighteenth birthday, she invited Sweet to a party at her aunt's house. After arriving at the house, Sweet and Brickell went outside to a fire pit on the property. Brickell introduced Sweet to her 14-year-old cousin, J.R. Brickell's brother Steven was also present. The group sat in chairs around the fire.

Sweet commented that the fire was small. J.R. responded that it would be bigger if they threw Sweet onto it. Sweet became "serious" and angry, repeatedly asking J.R. why he made the comment even after J.R. told him he was joking. Sweet then went to J.R. and knocked J.R.'s hat off his head. J.R. stood up, and a brief struggle ensued. J.R. and Sweet then sat back down.

After Sweet and Brickell retrieved Sweet's backpack from Brickell's mother's car, Sweet began smoking some marijuana he had brought with him. He offered his pipe to the others, but they told him they didn't use drugs.

A short while later, Sweet said something like, "Don't mess with us Juggalos." "Juggalos" are fans of a particular musical group whose members wear face paint. J.R. laughed and asked Sweet if he meant "those guys who wear makeup." Sweet "thought it was time to fight," so he stood up again and approached J.R. Witnesses gave differing accounts about whether a shoving match started at that point and, if so, who started it. But within a few seconds, Sweet pulled out a knife and stabbed J.R. in the side. Sweet began apologizing and asking if he could help, following J.R. as he walked toward the house. After J.R.'s oldest brother warned Sweet off with a gun, Sweet left.

Emergency personnel took J.R. to Harborview hospital. Exploratory surgery revealed that a stab wound, one to one-and-a-half inches wide by three inches long, had penetrated the abdominal wall and caused minor damage to the liver.

Several days after the incident, Sweet turned himself in to police. The State charged him with assault in the first degree with a deadly weapon enhancement.

At trial, the court instructed the jury on self-defense, one of the defenses Sweet raised. During closing argument, the prosecutor discussed the lawfulness of Sweet's use of force:

> Was it lawful, or was it unlawful? Because if it is unlawful, then it is an assault. If it is lawful, then it is not. So was his use of force lawful is the question.
>
>     . . . When is it lawful? And the instructions tell you. Instruction Nos. 12 through 16 lay out for you when the use of force is lawful—when it is allowed. And in synthesizing those instructions, there are several main points to take away. First, the presumption is that the use of force is unlawful. Because unless it fits within those definitions, the presumption is unlawful. It becomes lawful if the person using force is not the first aggressor; the person using force subjectively believes he is about to be injured and that belief is objectively reasonable; the force used is being used to prevent an offense against the person; and the amount of force is no more than necessary.

The prosecutor also argued that Sweet was not entitled to argue self-defense because he had not proved that J.R. was actually committing an assault on him at the time of the stabbing:

> [J.R.] wasn't making any actual attempt at that point to commit an offense against him. And that's a requirement for lawful force. Even if you accept this claim that [J.R.]'s statement about throwing him in the fire was a threat. And that [J.R.]'s actions at the end of the first scuffle constituted a threat. That is not enough. What has to be there is that there was some intent to commit an offense at the time that the defendant stabbed him. That is not here, either. Because remember, what the defendant himself admits happened, they were both sitting down. [J.R.] wasn't even talking to him. They are 10 feet apart, and there is a person in between them. And it is the defendant who gets up and goes over towards [J.R.],

not the other way around. There is just no evidence to suggest that [J.R.] was committing or about [to] commit an assault or an offense against the defendant. And that means that his use of force was not lawful.

Defense counsel made no objection to either argument.

The jury convicted Sweet as charged. Sweet appeals.

Analysis

Prosecutorial Misconduct

Sweet asserts that two instances of prosecutorial misconduct violated his due process right to a fair trial. To establish a claim of prosecutorial misconduct, he must show that the conduct was both improper and prejudicial.[1] Because he did not object to the alleged misconduct at trial, Sweet must also show it was so flagrant and ill intentioned that it caused prejudice incurable by a proper jury instruction.[2] Prejudice occurs only if "'there is a substantial likelihood the misconduct affected the jury's verdict.'"[3] We review misconduct claims in the context of the total argument, the evidence addressed, the issues in the case, and the jury instructions.[4]

First, Sweet alleges that by arguing that Sweet's use of force was presumed to be unlawful, the prosecutor improperly shifted the burden of proof to the defense and misstated the law. To be entitled to a jury instruction on self-defense, a defendant must present some evidence of self-defense. At that point,

---

[1] State v. Monday, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (quoting State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009)).
[2] State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).
[3] Monday, 171 Wn.2d at 675 (internal quotation marks omitted) (quoting State v. Yates, 161 Wn.2d 714, 774, 168 P.3d 359 (2007)).
[4] State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006).

the burden shifts to the prosecution to rebut the presumption of lawfulness and prove the absence of self-defense beyond a reasonable doubt.[5]

Here, the State concedes that the prosecutor misstated the burden of proof by stating that the use of force in self-defense is presumed unlawful. We accept the State's concession. But the State argues that because Sweet did not object and because this misstatement was brief, not repeated, and "not an inflammatory type of error," Sweet has waived this claim. We agree.

Sweet relies heavily on State v. McCreven,[6] in which Division Two of this court held that a prosecutor's statements misstating the State's burden to disprove self-defense were not harmless. We distinguish McCreven. As Sweet notes, the court's reversal of the defendants' convictions in that case was based only in part on the prosecutor's improper burden-shifting comments. In McCreven, the court's written instructions to the jury also misstated the State's burden, stating that the defendants had "the burden of proving this defense by a preponderance of the evidence."[7] During rebuttal, the prosecutor repeated this burden-shifting argument, and the trial court overruled defense objections.[8] Division Two concluded, "Because we hold that the self-defense jury instructions impermissibly lowered the State's burden to disprove self-defense, we cannot hold that the prosecutor's misstatements were harmless when viewed in the

---

[5] State v. Walden, 131 Wn.2d 469, 473-74, 932 P.2d 1237 (1997).
[6] 170 Wn. App. 444, 471, 284 P.3d 793 (2012).
[7] McCreven, 170 Wn. App. at 464.
[8] McCreven, 170 Wn. App. at 469-71.

context of the entire case."[9] Here, by contrast, Sweet does not dispute that the court's written instructions correctly stated the law. And the trial court instructed Sweet's jury orally and in writing that they must disregard argument that conflicted with the law they received in the court's instructions.

Similarly, Sweet's reliance on State v. Walker[10] is misplaced. Conflicting testimony made that case "largely a credibility contest, in which the prosecutor's improper arguments could easily serve as the deciding factor."[11] Moreover, the prosecutor not only misstated the standard for a self-defense claim but also made several other improper arguments.[12] Division Two noted the many disputed facts, "the frequent use and repetition of improper statements," and the emphasis of these statements by the use of PowerPoint slides. The court concluded that further instruction by the trial court would likely not have cured the resulting prejudice and there was a "substantial likelihood" the prosecutor's comments affected the jury's verdict.[13] Here, by contrast, the misstatement at issue amounted to a few sentences supporting one erroneous argument. Although the parties disputed Sweet's claim of self-defense, they did not dispute the basic facts of the altercation and stabbing. And the prosecutor made the comments in the context of proper instructions and otherwise correct statements of the law.

---

[9] McCreven, 170 Wn. App. at 471.
[10] 164 Wn. App. 724, 265 P.3d 191 (2011).
[11] Walker, 164 Wn. App. at 738.
[12] Walker, 164 Wn. App. at 729.
[13] Walker, 164 Wn. App. at 738-39.

Sweet also contends that the prosecutor misstated the law by arguing that Sweet could not assert self-defense unless J.R. was in the process of assaulting Sweet at the time of the stabbing. In Washington, a defendant may use deadly force when he or she "reasonably believes he or she is threatened with death or 'great personal injury.'"[14] Here, the prosecutor's assertion contradicted the court's instructions, which allowed self-defense upon a defendant's reasonable belief that injury is imminent:

> A person is entitled to act on appearances in defending himself, if he believes in good faith and on reasonable grounds that he is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

The prosecutor's argument improperly shifted the burden to the defense to produce evidence of more than a reasonable belief of imminent injury. However, Sweet did not object to the comments, and here again, he fails to show that an appropriate jury instruction would not have cured any prejudice created by the argument.

As the McCreven court noted, we presume that juries follow the court's instructions.[15] In the overall context of the total argument, the evidence addressed, the issues in the case, and the jury instructions, the prosecutor's improper comments did not prevent the correct legal standard from being "manifestly apparent to the average juror."[16] Our Supreme Court recently held

---

[14] Walden, 131 Wn.2d at 474; RCW 9A.16.050(1).
[15] McCreven, 170 Wn. App. at 471.
[16] Walden, 131 Wn.2d at 473.

that the trial court's "correct instructions given throughout the case cured any potential prejudice that could have possibly arisen" from isolated improper remarks, even from the trial court itself.[17] Given the trial court's proper instruction here, Sweet's argument that the prosecutor's misconduct "was so pervasively prejudicial that no instruction could have cured the prejudicial effect" does not persuade us.

Ineffective Assistance of Counsel

Sweet alleges defense counsel provided ineffective assistance by failing to object to the prosecutor's improper comments, violating Sweet's right to a fair trial. To prevail on a claim of ineffective assistance, Sweet must show (1) his attorney's representation fell below an objective standard of reasonableness and (2) resulting prejudice, that is, a reasonable probability that the result of the trial would have been different absent the deficient performance.[18] The reviewing court strongly presumes that counsel's conduct constituted sound trial strategy.[19] If one of the two prongs of the test is absent, we need not inquire further.[20]

Sweet asserts that "there could be no legitimate trial strategy in failing to object . . . to the prosecutor's improper closing argument, which shifted the burden of proof on self-defense and imposed an additional requirement upon Sweet that the law did not." But because he fails to show that the argument itself

---

[17] State v. Kalebaugh, 183 Wn.2d 578, 586, 355 P.3d 253 (2015).

[18] Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[19] In re Pers. Restraint of Rice, 118 Wn.2d 876, 888-89, 828 P.2d 1086 (1992) (citing Strickland, 466 U.S. at 689).

[20] Strickland, 466 U.S. at 697.

prejudiced him, he does not show prejudice from defense counsel's failure to object to it.

## Conclusion

The prosecutor's comments during closing argument improperly shifted the State's burden to disprove self-defense. But because Sweet did not object and does not show that these misstatements were incurable by proper instruction, he does not show prosecutorial misconduct. And because he does not show prejudice from these statements, his attorney's failure to object does not support a claim for ineffective assistance of counsel. We affirm.

_Leach, J._

WE CONCUR: