IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37015-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SHERI ANN WOOLEY, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Sheri Wooley appeals after a jury found her guilty of

first degree burglary, fourth degree assault, and malicious mischief. She argues the trial

court violated her constitutional right to confront the accusing witness by limiting her

cross-examination. She also argues the trial court abused its discretion by admitting

evidence of a prior bad act. We disagree with her arguments and affirm.

FACTS

Sheri Wooley and the accusing witness, Cheryl Petersen, have a shared history.

Wooley was married to Gerald Wooley and they had two children together. They

divorced in 2006. In 2007, Gerald married Cheryl Petersen. In 2009, Gerald's father

quitclaimed a house to the two of them. Gerald and Petersen divorced in 2011, and

Gerald received the house.  At some later point, Gerald and Petersen reconnected and began spending time together.  Gerald died in 2018 without leaving a will.

Wooley believed that her son, then in his early 20s, should inherit Gerald's house. In fact, he was living in the house when Gerald died.  At some point, Wooley learned that Petersen was claiming an ownership interest in the house.

On May 11, 2018, Wooley showed up at Petersen's apartment, shouted at her, and threatened her.  Following this, Petersen called 911, but she did not want charges brought against Wooley.  However, she petitioned for and obtained a temporary restraining order that prevented Wooley from coming near her or her apartment.  The temporary order also set a hearing date of May 25 to consider testimony to determine whether a final restraining order should be entered.  There is no evidence that the temporary order and notice of hearing was ever served on Wooley.  Petersen appeared at the May 25 hearing, but Wooley did not.  The court entered an order extending the temporary order and setting a new hearing date.

Soon after Petersen returned home from court, she heard a knock on her door.  She asked who it was, and a voice eventually responded, "Shandy."  Report of Proceedings (RP) (July 16, 2019) at 274.  Petersen and Shandy were good friends.  Petersen eventually opened the door and saw Wooley instead of Shandy.  Wooley forced her way into

2

Petersen's apartment, grabbed her, and repeatedly hit her. Wooley then ransacked Petersen's apartment.

Petersen escaped, but Wooley followed her and continued attacking her. Petersen yelled for help. When Wooley saw a man, she fled. Petersen called 911 and reported the assault and the burglary.

Wooley was later arrested and questioned by an officer about the attack. Wooley first denied being at Petersen's apartment on May 25, but later said she was around the apartment, but only drove around and honked.

The State charged Wooley with first degree burglary, first degree criminal impersonation, fourth degree assault, third degree malicious mischief, and driving while license suspended/revoked.[1]

*Pretrial hearing*

An evidentiary hearing occurred the day before trial. By this time, the State had disclosed a witness who would confirm that Wooley attacked Petersen on May 25. Perhaps for this reason, Wooley no longer denied she assaulted Petersen. Instead, Wooley's theory of the case was that Petersen allowed Wooley into her apartment so they could discuss Gerald's house, Petersen said something that upset her, and she lost her

---

[1] Before trial, the State dismissed the driving while suspended/revoked charge.

3

temper and hit her.  This theory allowed Wooley to argue that she did not commit two felonies—first degree impersonation and first degree burglary.

At the pretrial hearing, the State sought to admit evidence of the history between Wooley and Petersen, including years-old convictions and violations of restraining orders. The State argued that the history was admissible as res gestae so the jury understood what led to the May 25 attack.  The trial court allowed some general history of Wooley and Petersen's relationship but, with one exception, did not allow any prior bad act or conviction.  The one exception was the May 11, 2018 incident, which the trial court determined was necessary so the jury could understand what led to the temporary restraining order and the May 25, 2018 alleged attack.

As the hearing concluded, the State noted that Wooley had just handed it a number of documents it had not previously seen and the documents pertained to the probate of Gerald's estate.  The State asked the trial court to clarify what would and would not be allowed.

Wooley explained the probate documents assisted her argument that Petersen falsely claimed Wooley entered her apartment without permission.  The documents included a June 8, 2018 petition and order appointing Petersen personal representative of Gerald's estate.  The petition and order were entered shortly after Wooley was arrested

and incarcerated.  The trial court ruled Wooley could question Petersen about petitioning

and being appointed personal representative soon after Wooley was incarcerated.  The

court recognized this evidence was important so Wooley could argue her theory of the

case.

But Wooley also wanted to admit the probate documents, including an order that

showed how much Petersen received from Gerald's estate and how much Wooley's

children received from the estate.  Wooley explained that Petersen received $25,000 or

$26,000 from Gerald's estate, and the two children received a total of $12,000.  The State

objected and argued the documents had not been previously disclosed, and it did not want

Wooley to relitigate the probate matter.

The trial court disallowed these documents and assured Wooley that its previous

ruling allowed Wooley to sufficiently cross-examine Petersen about her motives.

*Trial*

During trial, the State presented the evidence noted above.  In addition, the State

questioned Petersen about her surprise when Wooley appeared at her apartment on

May 11, 2018, the date of the initial incident.

> [PROSECUTOR:]  Okay.  And . . . why . . . didn't [you] want her to
> know where you lived?
> [PETERSEN:]  Because she has caused me harm and intended to
> harm me before that day.

RP (July 16, 2019) at 268.  Wooley objected, but the trial court overruled her objection.

The State also called Petersen's neighbor, who testified about the May 25, 2018 incident.  He testified he saw Wooley and Petersen struggle outside Petersen's apartment. He testified Wooley looked up, saw him, and fled.

The State called another witness who testified Wooley confided details of the May 25 attack to her.  Wooley told this witness that she "went up and knocked on the lady's door and posed as one of that other lady's friends and as soon as the lady opened the door, she just obliterated her face," and "[j]ust started wailing on her . . . ."  RP (July 17, 2019) at 407-08.

The jury returned guilty verdicts on the charges of first degree burglary, fourth degree assault, and malicious mischief.  The trial court later entered its judgment and sentence, and Wooley timely appealed to this court.

ANALYSIS

LIMITED CROSS-EXAMINATION

Wooley contends the trial court violated her federal and state constitutional rights to confront her accuser, Petersen, when it ruled it would not admit evidence of what Petersen and Wooley's two children received from Gerald's probate estate.

6

The right to present evidence in one's defense is guaranteed by both the United States and the Washington Constitutions. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Hudlow*, 99 Wn.2d 1, 14, 659 P.2d 514 (1983). The constitutional right to present a defense and to confront the State's witnesses through meaningful cross-examination are among the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). Cross-examination into a witness's biases or ulterior motives is always relevant and is an important function of the constitutionally protected right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 316-17, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).

The right of a defendant to present evidence is not absolute. Evidence must be at least minimally relevant. *State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. For evidence to be admissible, there must be a logical nexus between the evidence and the fact being established. *State v. Cochran*, 102 Wn. App. 480, 486, 8 P.3d 313 (2000).

Here, the trial court allowed Wooley to present evidence that Petersen wanted Wooley out of the way so Petersen could inherit from Gerald's probate estate. Wooley

7

presented evidence that Gerald intended their son to inherit his house, their son in fact lived in the house when Gerald died, and, shortly after Wooley was incarcerated, Petersen successfully petitioned a court to be appointed personal representative of Gerald's estate. All this evidence allowed Wooley to argue Petersen sought to get Wooley out of the way so she could not assist her son in protecting his interest in Gerald's house.

Wooley argues she also needed to establish Petersen succeeded in her plan. We disagree. Whether Petersen succeeded or failed in her purported plan does not make her motive to lie any more or less probable. For example, had Petersen not succeeded, evidence that the probate court did not distribute any money to Petersen would not be admissible to negate Petersen's purported intent.

We conclude the trial court did not err or violate Wooley's constitutional right to present evidence.

EVIDENCE ADMITTED PURSUANT TO ER 404(b)

Wooley contends the trial court erred by allowing the State to elicit testimony from Petersen that Wooley had previously "caused [her] harm and intended to harm [her]." Wooley argues the evidence should not have been admitted under ER 404(b) because it allowed the jury to infer propensity toward violent action from this uncharged prior act. We disagree.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b). ER 404(b) must be read in conjunction with ER 403. *State v. Gunderson*, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014).

Before admitting misconduct evidence, the court must (1) find by a preponderance of the evidence the misconduct actually occurred, (2) identify the purpose for which the evidence is offered, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect. *State v. Slocum*, 183 Wn. App. 438, 448, 333 P.3d 541 (2014). The court must conduct this inquiry on the record. *State v. McCreven*, 170 Wn. App. 444, 458, 284 P.3d 793 (2012).

Here, the State asked Petersen why she did not want Wooley to know where she lived. It is not obvious that the question would produce an objectionable answer. But it did. Instead of Petersen responding that she was afraid of Wooley, she responded that Wooley had harmed her in the past. To the extent "harmed" implied hit or assaulted, the objection should have been sustained.

Even if the trial court erred, this error was harmless. "Erroneous admission of evidence in violation of ER 404(b) is analyzed under the nonconstitutional harmless error standard—that is, we ask whether there is a reasonable probability that, without the error,

'the outcome of the trial would have been materially affected.'" *State v. Gower*, 179 Wn.2d 851, 854, 321 P.3d 1178 (2014) (internal quotation marks omitted) (quoting *State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207 (2012)).

We note that Wooley gave inconsistent statements about whether she hit Petersen. She first told an officer she did nothing more than drive around where Petersen lived and honk. She later testified that Petersen let her in the apartment and she had no intent to attack her until she lost her temper. Wooley's inconsistent statements likely caused the jury to give little weight to her trial testimony.

Also, Petersen had recently gone to court to obtain a temporary restraining order. On the day of the attack, Petersen went to court for the contested hearing. When Wooley did not appear, the court extended the temporary restraining order, presumably at Petersen's request. The jury likely believed that Petersen was sufficiently fearful of Wooley that she would not knowingly open her door to Wooley.

Notably, Petersen's testimony was buttressed by a witness who testified that Wooley admitted Petersen's version of events. According to this witness, Wooley told her that she "posed as one of that other lady's friends and as soon as the lady opened the door, she just obliterated her face." RP (July 17, 2019) at 407-08.

10

No. 37015-1-III
*State v. Wooley*

Given the strength of the State's case, we readily conclude the admission of Petersen's statement of once being harmed by Wooley did not materially affect the outcome of the trial. Error, if any, was harmless.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Pennell, C.J.

Fearing, J.

11